IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


SUSAN L. BRIGHT,                    )
                                    )
                 Plaintiff,         )
                                    )
vs.                                 )        Case No. 08-1196-MLB
                                    )
MICHAEL J. ASTRUE,                  )
Commissioner of                     )
Social Security,                    )
                                    )
                 Defendant.         )
_____)


RECOMMENDATION AND REPORT


     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits.  The matter has been fully briefed by the
parties and has been referred to this court for a recommendation
and report.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's decision
to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the

1

correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by
such evidence that a reasonable mind might accept to support the
conclusion.  The determination of whether substantial evidence
supports the Commissioner's decision is not simply a quantitative
exercise, for evidence is not substantial if it is overwhelmed by
other evidence or if it really constitutes mere conclusion.  Ray
v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court
is not to reweigh the evidence, the findings of the Commissioner
will not be mechanically accepted.  Nor will the findings be
affirmed by isolating facts and labeling them substantial
evidence, as the court must scrutinize the entire record in
determining whether the Commissioner's conclusions are rational.
Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The
court should examine the record as a whole, including whatever in
the record fairly detracts from the weight of the Commissioner's
decision and, on that basis, determine if the substantiality of
the evidence test has been met.  Glenn, 21 F.3d at 984.

     The Social Security Act provides that an individual shall be
determined to be under a disability only if the claimant can
establish that they have a physical or mental impairment expected
to result in death or last for a continuous period of twelve
months which prevents the claimant from engaging in substantial

2

gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not

to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

**II.  History of case**

On July 16, 2007, administrative law judge (ALJ) Robert J. Burbank issued his decision (R. at 23-29).  Plaintiff alleges that she has been disabled since March 17, 2000 (R. at 23). Plaintiff is insured for disability insurance benefits through December 31, 2005 (R. at 25).  At step one, the ALJ found that

4

plaintiff has not engaged in substantial gainful activity since March 17, 2000, the alleged onset date (R. at 25). At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease (DDD), lumbar spine; status post two back surgeries; and status post hip replacement (R. at 25). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 26). After determining plaintiff's RFC (R. at 26), the ALJ found at step four that plaintiff is able to perform past relevant work as an account clerk, office manager, and a supervisor, medical office (R. at 29). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 29).

**III.  Did the ALJ err in his credibility analysis?**

The framework for the proper analysis of evidence of pain is that the Commissioner must consider (1) whether claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the claimant's subjective allegations of pain; and (3) if so, whether considering all the evidence, both objective and subjective, claimant's pain is in fact disabling. Kepler v. Chater, 68 F.3d 387, 390-91 (10th Cir. 1995); Thompson v. Sullivan, 987 F.2d 1482, 1488-89 (10th Cir. 1993); Luna v. Bowen, 834 F.2d 161, 163-65 (10th Cir. 1987). If an impairment is reasonably expected to produce some pain, allegations of

5

disabling pain emanating from that impairment are sufficiently
consistent to require consideration of all relevant evidence.
For example, an impairment likely to produce some back pain may
reasonably be expected to produce severe back pain in a
particular claimant.  Luna, 834 F.2d at 164.  Symptoms can
sometimes suggest a greater severity of impairment than is
demonstrated by objective and medical findings alone.  Direct
medical evidence of the cause and effect relationship between the
impairment and the degree of claimant's subjective complaints
need not be produced.  Luna, 834 F.2d at 165.  The absence of an
objective medical basis for the degree of severity of pain may
affect the weight to be given to the claimant's subjective
allegations of pain, but a lack of objective corroboration of the
pain's severity cannot justify disregarding those allegations.
When determining the credibility of pain testimony the ALJ should
consider the levels of medication and their effectiveness, the
extensiveness of the attempts (medical or nonmedical) to obtain
relief, the frequency of medical contacts, the nature of daily
activities, subjective measures of credibility that are
peculiarly within the judgment of the ALJ, the motivation of and
relationship between the claimant and other witnesses, and the
consistency or compatibility of nonmedical testimony with

objective medical evidence.  Thompson, 987 F.2d at 1489.[1]

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005).  Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence.  However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.  Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).  Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff.  Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence.  So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Kepler.  White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel,

---

[1]The factors listed in the regulations are similar to the factors noted in Thompson.  They are: objective medical evidence; daily activities; location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medications taken to relieve pain or other symptoms; treatment, other than medication, for pain or other symptoms; measures plaintiff has taken to relieve pain or other symptoms; and other factors concerning limitations or restrictions resulting due to pain or other symptoms.  20 C.F.R. § 404.1529(c)(2),(3)(i-vii)(2008 at 381-382).

206 F.3d 1368, 1372 (10th Cir. 2000).  An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why.  McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002).  It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were not credible.  Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004).  On the other hand, an ALJ's credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be affirmed by the court.  White, 287 F.3d at 909-910.

The ALJ found that plaintiff's daily activities do not support her allegations of disabling pain, indicating as follows:

> The medical evidence suggests that the claimant has some deconditioning and age-related changes. However, the record does not substantiate that the claimant's hip and back problems are so severe that she is disabled. The claimant is very active physically and mentally. She takes care of her personal hygiene. She needs assistance only on occasion with household chores. She cooks, does laundry and light cleaning. The claimant handles the family personal business. The claimant's allegation that she needs to lie down several times during the day is inconsistent with her regular activities of embroidery, completing crossword puzzles, sewing and reading. (Exhibit 8E) She spends time on the computer chatting with family members and friends regularly. The claimant also belongs to two social groups which meet outside of her home

8

> monthly. The claimant reported that she
> attends sporting events which is an
> indication of tolerable pain. She also drives
> a motor vehicle regularly which is
> inconsistent with disabling pain. The
> claimant socializes regularly outside of the
> home with family and friends. She testified
> that she can lift a gallon of milk at least
> three times a day which is an indication of
> good exertional ability. The claimant's
> allegation that she can sit for only 30
> minutes at a time is not supported by the
> medical evidence or the claimant's daily
> activities.

(R. at 28).

Although the nature of daily activities is one of many factors to be considered by the ALJ when determining the credibility of testimony regarding pain or limitations, Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993), the ALJ must keep in mind that the sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity. Thompson, 987 F.2d at 1490; see Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983)(the fact that claimant admitted to working in his yard, performed a few household tasks, worked on cars, and took occasional trips was found by the court to be activities not conducted on a regular basis and did not involve prolonged physical activity; while this evidence may be considered along with medical testimony in the determination of whether a party is entitled to disability benefits, such diversions do not establish, without more evidence, that a person is able to engage in substantial gainful

9

activity).  One does not need to be utterly or totally
incapacitated in order to be disabled.  <u>Vertigan v. Halter</u>, 260
F.3d 1044, 1050 (9th Cir. 2001); <u>Jones v. Sullivan</u>, 804 F. Supp.
1398, 1405 (D. Kan. 1992).

In the case of <u>Draper v. Barnhart</u>, 425 F.3d 1127, 1130-1131
(8th Cir. 2005), the ALJ noted that the claimant engaged in
household chores, including laundry, grocery shopping, mowing,
cooking, mopping and sweeping.  The ALJ concluded that claimant's
allegations of disabling pain were inconsistent with her reports
of her normal daily activities and were therefore not deemed
credible.  The court found that substantial evidence did not
support this conclusion, holding as follows:

> **The fact that Draper tries to maintain her
> home and does her best to engage in ordinary
> life activities is not inconsistent with her
> complaints of pain, and in no way directs a
> finding that she is able to engage in light
> work**.  As we said in <u>McCoy v. Schweiker</u>, 683
> F.2d 1138, 1147 (8th Cir.1982) (en banc), the
> test is whether the claimant has "the ability
> to perform the requisite physical acts day in
> and day out, in the sometimes competitive and
> stressful conditions in which real people
> work in the real world."  In other words,
> evidence of performing general housework does
> not preclude a finding of disability.  In
> <u>Rainey v. Dep't of Health & Human Servs.</u>, 48
> F.3d 292, 203 (8th Cir.1995), the claimant
> washed dishes, did light cooking, read,
> watched TV, visited with his mother, and
> drove to shop for groceries.  We noted that
> these were activities that were not
> substantial evidence of the ability to do
> full-time, competitive work. In <u>Baumgarten v.
> Chater</u>, 75 F.3d 366, 369 (8th Cir.1996), the

ALJ pointed to the claimant's daily
activities, which included making her bed,
preparing food, performing light
housekeeping, grocery shopping, and visiting
friends.  We found this to be an unpersuasive
reason to deny benefits: "We have repeatedly
held...that 'the ability to do activities
such as light housework and visiting with
friends provides little or no support for the
finding that a claimant can perform full-time
competitive work.' " Id. (quoting <u>Hogg v.
Shalala</u>, 45 F.3d 276, 278 (8th Cir.1995)).
Moreover, we have reminded the Commissioner

that to find a claimant has the
residual functional capacity to
perform a certain type of work, the
claimant must have the ability to
perform the requisite acts day in
and day out, in the sometimes
competitive and stressful
conditions in which real people
work in the real world...The
ability to do light housework with
assistance, attend church, or visit
with friends on the phone does not
qualify as the ability to do
substantial gainful activity.

Thomas v. Sullivan, 876 F.2d 666, 669 (8th
Cir.1989) (citations omitted).

<u>Draper</u>, 425 F.3d at 1131 (emphasis added).

The court finds numerous errors by the ALJ in his analysis

of plaintiff's daily activities.  First, the ALJ, citing to

Exhibit 8E, states that plaintiff "takes care of her personal

hygiene" (R. at 28).  However, under personal care in Exhibit 8E,

plaintiff indicates the following limitations:

Dress: problems with sock & tying shoes

Bathe: can only shower; I can't get out of
tub if sitting.  Lifting my leg over tub is a

11

> problem.
>
> Care for hair: I can wash my hair but don't style or blow dry very often.
>
> Shave: I have trouble shaving my legs; foot care is very difficult.
>
> Feed self: OK
>
> Use the toilet: Have trouble cleaning myself properly.

(R. at 135).  Thus, a review of the exhibit cited to by the ALJ paints a very different picture of plaintiff's ability to take care of personal hygiene as compared to the ALJ's statement that plaintiff takes care of her personal hygiene.  The ALJ cannot distort the evidence and ignore evidence favorable to the plaintiff.  Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

Second, the ALJ, again citing to Exhibit 8E, states that plaintiff's "allegation that she needs to lie down several times during the day is inconsistent with her regular daily activities of embroidery, completing crossword puzzles, sewing and reading" (R. at 28).[2]  Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence.  See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the

---

[2]Plaintiff does indicate in the exhibit that she engages in these activities, but does not indicate what posture she is in when she engages in these activities, and does not indicate for how long each day she engages in these activities (R. at 138).

evidence as a whole, there is sufficient evidence which a
reasonable mind might accept as adequate to support a
conclusion).  The court finds that it is not reasonable to
conclude that activities of embroidery, completing crossword
puzzles, sewing and reading are inconsistent with plaintiff's
claim she needs to lie down several times a day.  There is no
evidence in the record that plaintiff's posture when she engages
in these activities, and the length in which she engages in these
activities, is inconsistent with her claims that she needs to lie
down several times during the day.  In fact, plaintiff indicated
in Exhibit 6E that she watches TV and reads while laying down
resting (R. at 119).  Furthermore, a reasonable person would know
that most, if not all, of these activities could be engaged in
while lying down or reclining.

    Third, the ALJ noted that plaintiff's attendance at sporting
events[3] is an indication of tolerable pain, and that her driving
a motor vehicle regularly is "inconsistent with disabling pain"
(R. at 28).  Although plaintiff indicated in Exhibit 8E that she
drove a car, it does not indicate how often she drove or for how
long.  She did indicate that she goes out 3-4 times a day,
spending time sitting on her front porch (R. at 137).  Plaintiff
also indicated that whether she is able to go out is totally

---

[3]Plaintiff indicated in Exhibit 8E that she attends
"sporting events sometimes" (R. at 138).

driven by her pain level (R. at 139).  As noted in <u>Draper</u>, the fact that plaintiff does her best to engage in ordinary life activities is not inconsistent with her complaints of pain and in no way directs a finding that she is able to work.

The ALJ asserted that plaintiff is "very active physically and mentally" (R. at 28).  However, plaintiff's statements and her testimony do not provide substantial evidence that plaintiff is able to perform full-time competitive work; nor do they provide substantial evidence that plaintiff is able to engage in prolonged physical activity.  Plaintiff's statement indicates that she need to frequently rest when engaging in daily activities (R. at 134).  One does not need to be utterly or totally incapacitated in order to be disabled.

Fourth, the ALJ concluded that plaintiff's allegation that she can only sit for 30 minutes at a time is not supported by the medical evidence or her daily activities.[4]  However, her treating physician, Dr. Robl,[5] stated that the pressure on her nerve roots increases with upright positions of sitting and standing, which

_____

[4]Plaintiff testified that she could sit at a computer for a maximum of 30 minutes, after which she would have to lay down or get up and move around, walking around a little bit, or stretching her knees.  As the day progressed she could sit for only 15-20 minutes.  She stated that she could only sit for a total of 3-3 ½ hours in an 8 hour day (R. at 676-678).

[5]The weight accorded to the opinions of Dr. Robl by the ALJ, which was closely tied to the ALJ's erroneous analysis of plaintiff's daily activities, will be discussed later in this report and recommendation.

increases her pain, and that reclining unloads the pressure and
improves the pain, which is why she must recline a lot (R. at
32).  Thus, medical evidence from plaintiff's treatment physician
provides some support for her claim that she can only sit for 30
minutes at a time.  Furthermore, the ALJ fails to point to
anything in plaintiff's statements (Exhibits 6E or 8E) or her
testimony which clearly indicates that she can sit for more than
30 minutes at a time.

The ALJ, when making his credibility assessment of the
plaintiff, particularly in regards to the analysis of plaintiff's
daily activities, made findings unsupported or contradicted by
the record.  Because a credibility assessment requires
consideration of all the pertinent factors in combination, when
several of the factors relied upon by the ALJ are found to be
unsupported or contradicted by the record, this court is
precluded from weighing the remaining factors to determine
whether they, by themselves, are sufficient to support the ALJ's
credibility determination.  Romero v. Apfel, 2000 WL 985853 at *4
(10th Cir. July 18, 2000).  In light of the above errors in the
ALJ's credibility analysis, particularly in regards to the
analysis of plaintiff's daily activities, the court finds that
the ALJ's credibility analysis is not supported by substantial
evidence.  For this reason, this case should be remanded in order
for the ALJ to conduct a proper analysis of plaintiff's

credibility.

**IV.  Did the ALJ erroneously reject the opinions of Dr. Robl, plaintiff's treating physician?**

Dr. Robl stated on May 29, 2007 that plaintiff's back and hip problems create severe difficulty with bending, stooping, lifting, crouching, crawling, sitting and standing.  The pressure on her nerve roots increase with upright positions of sitting and standing, increasing her pain.  Reclining improves the pain, which is why she must recline a lot.  Plaintiff's pain, although not measurable, is consistent with her condition.  After her hip surgery and neuro-stimulator implant, she has to lie down from 1-4 hours of an 8 hour day depending on the level of back pain. Dr. Robl indicated that her condition had been this severe since 2000, and he stated that there is no doubt that she could not have been either a reliable or full-time employee.  He stated that she is a credible patient who does not over report her symptoms, and that her complaints are consistent with the objective medical evidence (R. at 32).[6]

---

[6]Plaintiff argues that he could not locate this statement by Dr. Robl in the list of exhibits, although he conceded the statement was discussed by the ALJ in his decision (plaintiff thus attached the statement as an Exhibit to his brief). Plaintiff argues the Appeals Council could not have conducted a legitimate review without this statement (Doc. 5 at 2). Defendant supplemented the record on February 2, 2009 by adding the statement, indicating that it was inadvertently omitted from the administrative record previously filed (Doc. 10-2).  However, Dr. Robl's statement does appear in the original administrative record (R. at 30-33).

The ALJ did not give controlling weight to the opinions of Dr. Robl (R. at 28), instead giving substantial weight to the physical RFC assessment by nonexamining physicians Dr. Tawadros and Dr. Legler (R. at 29, 488-497). In discounting the opinions of Dr. Robl, the ALJ relied on plaintiff's daily activities, including household chores, daily use of the computer, socializing outside of the home, and driving a motor vehicle, which the ALJ found to be inconsistent with Dr. Robl's opinion that plaintiff had to recline during much of the day (R. at 28). Dr. Robl opined that plaintiff needed to recline for 1-4 hours in an 8-hour day (R. at 32), which is generally consistent with plaintiff's testimony (R. at 661, 666-668).

The court has previously determined that the ALJ distorted and ignored evidence favorable to the plaintiff in regards to plaintiff's personal hygiene; that evidence of plaintiff's daily activities of embroidery, completing crossword puzzles, sewing and reading is not inconsistent with her claims that she needs to lie down several times during the day; that plaintiff's activities and ability to drive does not provide substantial evidence that plaintiff is able to engage in prolonged physical activity or perform full-time competitive work; and that the medical evidence from Dr. Robl and her daily activities certainly do not contradict, and even provide some support for, plaintiff's allegation that she can only sit for 30 minutes at a time.

17

Because of the ALJ's errors in analyzing plaintiff's daily activities, the court finds that the ALJ erred by relying on that same analysis of plaintiff's daily activities to discount the opinions of Dr. Robl.

On remand, the ALJ must take into account plaintiff's statements and testimony regarding her daily activities, which are not clearly inconsistent with the opinions of Dr. Robl.  The ALJ should also analyze the opinions of Dr. Robl keeping in mind that the opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight over the views of consulting physicians or those who only review the medical records and never examine the claimant.  The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).  When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the other way around.  Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual

18

examinations, such as consultive examinations.  If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it.  <u>Hamlin v. Barnhart</u>, 365 F.3d 1208, 1215 (10th Cir. 2004).  The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources.  <u>Robinson</u>, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.  <u>Castellano v. Secretary of Health & Human Services</u>, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion.  <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1083 (10th Cir. 2004).  A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;

(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion.  If the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so.  Watkins, 350 F.3d at 1301.

An ALJ must evaluate every medical opinion in the record, although the weight given to each opinion will vary according to the relationship between the disability claimant and the medical professional.  Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  In the determination of issues reserved to the Commissioner, such as opinions regarding: whether an impairment meets or equals a listing, plaintiff's RFC, whether a plaintiff can do past relevant work, how age, education, and work experience apply, and whether a plaintiff is disabled, treating source opinions are not entitled to special significance or controlling weight.  Soc. Sec. Rul. 96-5p, (Medical Source Opinions on Issues Reserved to the Commissioner), 1996 WL 374183, at *2.  However, even on issues reserved to the Commissioner, including the RFC determination and the ultimate issue of disability, opinions from any medical source must be carefully considered and must never be ignored.  Social Security Ruling

20

(SSR) 96-5p, 1996 WL 374183 at *2-3.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on May 11, 2009.


                    s/Donald W. Bostwick
                    DONALD W. BOSTWICK
                    United States Magistrate Judge